for the Ninth Circuit is now in session. Please be seated. Good morning, everyone. The cases will be called in the order listed on the docket. The first case, Rodriguez-Garay v. Bundy, has been submitted on the briefs. The first case on calendar for argument is Relator v. iLink. Good morning, Your Honor. Good morning. Good morning, Justice Miller, Justice Rawlinson, and Justice Johnstone. My name is Chuck Dender of the Cello Levitt, and I'm here on behalf of Plaintiff Appellant Relator, LLC. And may it please the Court. Your Honors, we believe that the District Court judge, the Honorable Gary Klausner, erred when he granted Defendant Appellee's motion to dismiss because, in his words, he found we failed to allege falsity as to any defendants. This Court, of course, reviews that decision on a de novo basis, and we ask this Court to reverse Judge Klausner's decision. We also believe the District Court erred and abused its discretion when he denied us leave to amend the first operative complaint. Your Honors, while those standards are, of course, very different, we believe they're interrelated here for the purposes of this argument because while we fully believe that we meant the standards in our first amended complaint and that the motion to dismiss should have been denied, we believe, and I hope this Court finds, that we're so close that perhaps the draftee of the complaint could have put in a specific statute, could have put in a specific reference to the PPP laws, but any mistakes that this Court may find would be addressable on amendment, the second amendment. So we would ask the Court to keep that in mind. I'm sorry, Your Honor. Counsel, I was going to say one of the criticisms that opposing counsel has regarding the pleading is that it was based on publicly available documents. What's your response to that? Your Honor, yes, and thank you, Your Honor. Defendants don't know that. Defendants point to what is publicly available information, and the PPP website, pandemicoversight.gov, we do not dispute is a source for the public disclosure bar. We don't doubt that that is a qualified source. That information is purely factual. Under the Ninth Circuit standard, under the Metesky test, under Silberscher, it doesn't amount to a public disclosure. There's no indication there of fraud. There's no, what is it, there's no as presented state of facts versus a real state of facts. There's no allegation. It doesn't put the government on notice that there was any fraud committed there. Our relators, defense counsel also makes a lot to do that our relators, Relator LLC, is an outsider, not an insider to the company, and as this Court is aware, there's no prohibition under the False Claims Act for an outsider to become a whistleblower. There may be a higher standard that they have to meet as far as proving their information, but as we allege in the complaint and as is briefed in our documents, not only are they outsiders who did their own investigative legwork, which, of course, defendants will have the right to get into at discovery and then raise the public disclosure bar again on summary judgment or at trial. They also talked to former employees, or current, or former employees, I'm sorry. So while the information that their complaint alleges may exist in the public realm, it's not that they based their complaint on that publicly disclosed or solely on that publicly disclosed information. They also did their investigative legwork. Did the complaint reference the employees, former employees, that were consulted and what information was garnered from that consultation? I don't believe the complaint did that, Your Honor, and that's a fix that can be done in the Second Amendment complaint. Our briefing discusses how they spoke to former employees at iLink, but no, the complaint, that's a failure of the complaint, but we don't believe it's a failure that renders the complaint subject to the motion to dismiss. We still believe that, importantly, this is a factual falsity or a legal falsity case, not an applied certification theory. We believe the complaint goes through all five certifications that were on their face false, and we believe that the complaint goes through the reasons why each of those five certifications were false on their face. Was the complaint drafted the way I would have drafted the complaint? Perhaps not, but I do believe the information was in there with allegations supporting the false factual certifications. You mentioned the possibility of amendment. Could you sort of sketch out what— is there additional factual information you'd be able to allege to support the falsity? My apologies, Your Honor. I'm a bit nervous. Yes, Your Honor. For instance, Judge Klausner took issue with the idea of getting into the— registered as a corporation in Delaware in late 2019, but registered a business that would only be doing business in California at that time period. Judge Klausner took issue with the fact that our allegation said they couldn't have been doing business until they registered on July 22nd. He sort of—I forget his exact language, but he sort of takes us to task for not citing the statutes, and we could cite to the California Tax Code statute and the California Secretary of State statute that says it's not proper to be doing business, including hiring employees, prior to being registered with the Secretary of State. So that's one thing that I think is a simple fix that could give some more clarity to the extent it's needed, and we sort of take issue that the defendants are not put on notice by this complaint of our allegations, but would bring more clarity to the complaint. And what about the $100,000 salary limit? I mean, you have—there's some question as to what your calculation even is. Whatever it is, it's not spelled out in the complaint. So I agree it's not spelled out clearly in the complaint, Your Honor, and there is some confusion, I will admit, in the complaint and with defense counsel too, not their fault, between the standards for getting the PPP loan and getting the standards— or the standard for getting the PPP loan forgiven, which we also allege are falsely certified. For getting the PPP first-draw loan, the amount you would receive would be 2.5 times your average monthly payroll. So what we did was we took—and I forget—we took the whole number divided by—it's in our brief, I'm sorry— by a number using the two-and-a-half-months method. That's how we came up with the $179,000. Defense counsel, I would say improperly, but understandably, divided that number by 12 months. That's not the way the PPP loan determinations were worked out. It was a factor of 2.5 months of your average monthly salaries. Why didn't you make these fixes in the amended complaint? Your Honor, I was not involved in the case yet. I don't know. To be quite honest with you, I don't know. There were some additional allegations made. I do believe that they had a good faith belief that they made those allegations clear. I still believe—and, again, I'm talking about amendment here, which is fine. I still believe the complaint does satisfy Rule 9b. But I believe, if given the chance, that I could quickly amend the complaint, being an experienced FCA lawyer, to meet the standards that are necessary in this case. What about Mr. Ayala? There's no allegation that he signed the disclosures, that he reviewed them, or even that he knew about them. So how can he possibly be liable? Well, Your Honor, it was sort of a control person standard for the PPP loans. We do allege he was the CEO, CFO, sole controlling person of the company. We don't use those words, but we do use that he was in charge of the affiliates, which would mean legally he had to be the one who either caused them to be—submitted them or caused them to be submitted. So there's control person liability under the Securities Act. But this is about—is there—do you have a case that says the False Claims Act— My apologies, Your Honor. I did not mean to bring in securities law with it. By control person, I meant the only person who could have caused— who could have submitted these or caused them to be submitted. He would have had to approve them at some point. Are there more questions? With respect to, if I may, I think I still have two minutes left. On the 478 employees, Your Honors, again, we believe that while the district court— what I think happened here, Your Honors, is it was sort of a hybrid standard that was applied to this. It was both a false or implied certification standard, which would require more details because there you're getting into the weeds of why a certification was false as opposed to it's facially false. With respect to the 478 employees, we believe that we did clearly allege that the only employee, if he was considered an employee, was Mr. Aiella. The company had only opened up, as far as we are concerned, legally on July 22nd, and he could not possibly have hired 478 employees. We spoke to an employee who said there were not 478 employees. And the employees that would have been there under the PPP, if you were a corporation that hired temporary employees, you were allowed to count those temporary employees as your employees because the purpose of the PPP was to keep your payroll going forward. The temporary employment agencies were not allowed to count those employees. They were only allowed to count their sort of in-house employees. And we believe that, while it could be better, we believe the allegation is that they counted in that 478. If they existed at all, which we do make the allegation that it didn't exist at all in the complaint, if they existed at all, that number was false because they counted sort of, I don't want to use the term outsourced, but sort of people who were placed by them to work at another company. They weren't responsible for their payroll. They were not eligible to claim them on their PPP loan application. All right, Kelsey, you want to save some time for rebuttal? Thank you so much, Your Honors. Thank you. Good morning. May it please the court. I think it's important to keep in mind that what we're dealing with here is a False Claims Act Relator that is a private entity that calls itself Relator LLC. The district court observed that it was aptly named, and its only purpose is to file FCA claims against businesses that took out PPP loan funding. What does that matter to 12b-6? It matters because it explains why all of Relator's allegations are completely conclusory, speculative. It has no insider information about any of the defendants. So, for example. The second point, what in the statute or in the case law requires them to be an insider? I mean, that's not a direct requirement. That's not an element, but the reason I bring it up and emphasize it is because it really goes a long way toward explaining why we see the complaint that we do here in which it's just pure legal conclusions unadorned by any facts. They just go through each certification in the PPP loan application and just allege that each one was false. Well, is it a fact that the business was in operation in February 2020 before it registered to do business in California? I mean, yes, that is a fact, but the only actual supporting fact that they allege is that the company didn't register to do business in California until July of 2020. So, they have no explanation or allegation as to why that would render them ineligible or render any of their statements in the PPP application false. I think they say it's that combined with the Delaware filing that says that it was doing business in California. So, if you take that latter filing to suggest that it wasn't doing business anywhere other than California and then the lack of a California filing to suggest it wasn't doing business in California, you can, I mean, we're just talking about what's plausible at the complaint stage. You could infer that it wasn't doing business anywhere, couldn't you? I mean, it's too tenuous under Rule 9b, right? 9b is a separate question, right? So, we've got a particularity standard and a plausibility standard, and let me know if I'm getting these in the wrong order. But, yes, they have to plead with particularity as to the who, what, where, when, how. But as to each of those factors, it only merely needs to be plausible that that's how they did it, that that's where they did it, that that's who did it, that that's what they did, right? Right. I mean, the cause of action itself has to be plausible. And so it's not, the standard isn't just let's see if they have any facts that relate to what they're talking about. It's have they pleaded enough factual detail to raise a plausible cause of action. And this, you know, the fact that it didn't register in California and its registration in Delaware, I mean, none of that, none of that necessarily indicates that it couldn't have had the reported number of employees. Another important fact about that is that. The employees are just one. You'd concede that a false certification of any of the one, two, three, four, five, or six, seven different, any one of those would be sufficient to state a claim. Yes. And of course, they allege every single one of them just trying to get something to stick. But none of them rises to the level of plausibility. What about the purchase of real estate shortly after the funding came in? I mean, so they allege that Mr. Ayala purchased that real estate. So to be clear, Mr. Ayala did not take out a PPP loan. Only the business entities, the separate entities, took out PPP loan funding. Do the entities have any other officers than Mr. Ayala or owners? I mean, none of this is alleged in the complaint in any kind of detail. So it's strictly not part of the record. But my understanding is that, yes, there are other individuals who at least have some kind of managerial authority within these companies. What about, to pick up on Judge Miller's question, the salary math? How do you understand that to work out so it is not plausibly? I mean, we think it's pretty straightforward. I mean, you know, that particular entity, that's I-Link Business Management, took a $1,232,162 loan and reported that it had 33 employees. So as the district court observed, if you divide $1,232,162 by 33, you come out with way, way less than $100,000. It's about $37,000 a year. But the loan wasn't supposed to cover the full year's salary. It was only two and a half months, right? I mean, this isn't. That's the allegation. Well, it's not alleged in the complaint. So, I mean, sure, they can try to clean that up in their briefing. But that wasn't in the record before the district court. And, in fact, in the district court's first dismissal order, it called out this exact point. And then there was nothing fixed. There was nothing clarified. There was nothing added in the first amended complaint. But how could it be otherwise if there's no apparent dispute in the facts that they weren't in business for a full year by this point? I mean, I don't think that they have alleged anything that plausibly makes that so. I mean, you know, it was incorporated in Delaware in 2019. And, I mean, you know. So it's not. It is the only. It's not plausible to believe other than that they were incorporated in Delaware to do business only in California, where they were not actually licensed to register to do business until several months later, and that had, in that limbo of being incorporated but not doing business, they had 33 employees that generated $1.2 million of salaries paid out all while they were not doing business in California. I mean, why do the employees have to be in California is the point. There's nothing. That's a great question for summary judgment, for trial. But I don't. There's nothing. Once you've said that you're a California business incorporated in Delaware but not doing business until July. Again, just in terms of getting over the line of plausibility, that's certainly very. It sounds very particular. So then the question is whether that's plausible. I mean, it can be as particular as it gets, but it doesn't indicate that any of the certifications in the PPP loan application were false. I mean, it's completely consistent that it could have, you know, been in operation, except, you know, incorporated as a different entity or something like that, but that we have to look at the actual certificate. Let me put it this way. It's not like they had to certify that they were doing business in California. Right. The location of the employees is not relevant to its eligibility for a PPP loan. Right. I mean, this is, I think, an interesting question that we've asked about your friend about what more would they have to do. Right. In other words, would the complaint have had to cite chapter and verse of California law, including cases, to say that registered to do business and being registered to do business in California is actually a legal requirement to do business in California? I mean, they needed to have at least alleged some factual detail in this regard. So, for example. Why isn't the late filing, the July filing of the registration, that factual detail? Because it's not enough. It's not enough to really.  So, for example, if they had some kind of statement or something they could cite or allege showing how many employees did each of them really have, you know, they just allege in their complaint, oh, well, that was false because they had zero employees. Okay. So how does Relator LLC know? Is there a statement of information? Is there some kind of SEC filing? Anyone can just look at a statement and allege that it's false and say the opposite is true. But if it were going to reach the particularity standard, we would expect to see some kind of something besides Relator's own say so that it could cite and point to showing why the statement is false. And that's, you know, under Rule 9B, under the cases, it has to be the who, what, the when, the where, the why, and the why it is false. So the basis for that knowledge. So opposing counsel represented that the Relator talked to employees of the company. So why shouldn't we grant, we direct the court to grant leave to amend to include those specifics that you think are necessary? Because they already got that opportunity. We went through an original round of motion to dismiss briefing. The district court dismissed but granted them leave to amend and said that it was highly skeptical and that there was, I think the word was a serious deficiency or devoid of factual detail. If that's not an alarm to tell you, you better put up and shut up now. And if you have some kind of explosive insider evidence that you're going to rely on, you better go ahead and put that into your amended complaint. And they did. But the standard is that leave to amend should be granted unless amendment would be futile. Is that what you're arguing, that any amendment would be futile? Yes. And, you know, just as a procedural matter that, you know, we can't just keep doing this over and over again. Rule 15 says that amendments should be allowed liberally. So it does contemplate that we do it over and over again as long as there is some, it's not futile to do so. So the rule contemplates perhaps an additional amendment. I think there also has to be a burden on plaintiffs that if they really are aware of something. And, I mean, think about that. That is, what could be more relevant that they say they went out and interviewed certain of our employees and they found out all these, you know, contradictory facts? Wouldn't that be, like, how do you forget about that? And so that should have been in their original complaint, much less in their first amended complaint after the district court told them that there was a serious factual deficiency in their complaint. That wouldn't render it futile, though, if the fact that they didn't see the importance of putting it in the first complaint or either the amended complaint, would that render it futile? I mean, I think there's something to be said about the fact that, you know, they didn't put it in there. And maybe one interpretation is that they forgot. Another interpretation is just that it's nowhere near as supporting of their position as they say that it is. So, I mean, while I'm sympathetic to the, you know, to the intuition of, oh, well, let's just see what they're going to allege. I mean, I think when they've already gotten two rounds of filing a complaint, I mean, if they haven't come forward with something like that yet, then it's just past the time when we're going to tolerate. All right. Thank you. OK, thank you. Yes. Thank you. Let's have two minutes. Thank you, Your Honors. Just briefly to clean up what we were discussing with respect to the $100,000. It's 15 U.S.C. Section 636, page six of our reply brief that mandates that the amounts, the salary to be calculated was 2.5 times your average salary, which leads to respectfully defendants and Judge Klausner making the mistake of dividing by 12 instead of dividing by, the number would actually be 4.8 if you do the math, which is 12 divided by the 2.5 months. That is material here. It's not just nitpicking. It's material here because while in defense, in the appellant's brief, they argue that you can factor in health care costs. I forget all the lists. They go through the list of all of your employees' costs, not just salary. That's actually untrue. The $100,000 cap was on all salary expenses. So if someone made, just making up numbers, if someone made $60,000 but had $41,000 in a benefit package, they would have been capped at $100,000. Just like an employee who made $130,000 in just pay, they would have been capped at $100,000. So it is material to another false statement with respect to their false statement to the government to get that extra, cause the government to pay that extra money over and above the $100,000 per salary. Can you just clarify, this is going back to the question I asked you before, of what you would add in an amended complaint? And in particular, you mentioned statements from employees of the defendant. What exactly would you allege that they've said? And that, Your Honor, is a great question, and I take defense counsel's point there. I mean, we can say that they didn't have 478 employees, right? The only thing you can really add through an insider statement at this time in a factual falsity case is it's not true. We weren't even operating it. I wasn't even hired yet. Would you have an insider statement to that effect that you would add to the complaint? We have insider statements we can add to the complaint, Your Honor. I don't know if they're going to be able to say just flat out it's not true because there were 217 employees at that date. I have not personally interviewed the employer. But, wait, so you haven't spoken to the employees whose statements you're adding? I personally have not, Your Honor. I've been on this case for about four months after Mr. Brew passed away. I've been discussing with my clients and my co-counsel, but I have not spoken to the employees. I personally have not spoken to the employees.  So then, I mean, that's maybe understandable given the timing of things, but it's not very helpful in terms of figuring out how that would add specificity. I appreciate that, Your Honor. Again, all I can do is talk to my co-counsel, as I have done. To be honest with you, we don't put the cart before the horse. In my mind, I've been drafting the complaint, as I think we tend to do as lawyers. There will be a drilling down of that, but I do want to circle us back to the amendment. I still don't think that's necessary at this stage. I do think this complaint satisfies the standard for a false claims act case under a facial falsity claim under the PPP loans. I do not think it is barred by the public disclosure defense, and I do think we adequately allege scienter as well. What's your response to opposing counsel's position that your clients have already been given two opportunities to plead their causes of action and have not been able to do so adequately and should not be allowed a third opportunity? I'm so sorry, Your Honor. A, I don't think that's the standard. B, I think Your Honor was right when you said leave is to be liberally given. As an FCA litigator, I can tell you that it's not rare to see 7th and 8th and 9th and 10th amended complaints. Several of the cases we cite, Silbershear, Soligo, Aetna, even though it came out the other way, they're all up on their 3rd and 4th and 5th amendment complaints. Sometimes it does take a while to get the complaint right under the false claims act context. I believe I could have done it and made it easier on this court. As I said, I believe we still did get it right, but I do not believe a 3rd amendment complaint is too much of a burden on defendants. I think we met the standard. I believe it's a very close call and that we can fix it. All right. Thank you, counsel. Thank you, Your Honor. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, MILLER, JOHNSTONE